**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| **KENNETH H. MUNSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil No. 3:15-cv-78** |
| ) | **Judge Aleta A. Trauger** |
| ) | |
| **ROBERT C. BRYAN, individually and in his** ) | |
| **official capacity as Sheriff of Wilson County,** ) | |
| **Tennessee; MICHAEL BARBEE, individually** ) | |
| **and in his official capacity as an employee of** ) | |
| **Wilson County, Tennessee; CITY OF** ) | |
| **LEWISBURG, TENNESSEE; SANTIAGO** ) | |
| **MCKLEAN, individually and in his official** ) | |
| **capacity of the Lewisburg** ) | |
| **Police Department; JOHN DOE I, individually** ) | |
| **and in his official capacity as an employee of** ) | |
| **the Lewisburg Police Department; JOHN** ) | |
| **DOE II, individually and in his official capacity** ) | |
| **as an employee of the Bedford County Sheriff's** ) | |
| **Department; and JOHN DOE III, individually** ) | |
| **and in his official capacity as an employee of** ) | |
| **the Wilson County Sheriff's Department;** ) | |
| ) | |
| **Defendants.** ) | |

<u>**MEMORANDUM**</u>

Pending before the court are two motions. The first is a Motion for Summary Judgment

filed by Sheriff Robert C. Bryan and Detective Michael Barbee (the "Wilson County

Defendants") (Docket No. 60), to which the plaintiff has filed a Response (Docket No. 74), and

the Wilson County Defendants have filed a Reply (Docket No. 76). The second is a Motion to

Dismiss and for Summary Judgment filed by the City of Lewisburg, Tennessee and Detective

Santiago McKlean (the "Lewisburg Defendants") (Docket No. 63), to which the plaintiff has

filed a Response (Docket No. 75), and the Lewisburg Defendants have filed a Reply (Docket

No. 77).  For the following reasons, both motions will be granted.

## FACTS[1]

This case arises from the investigation and arrest of the plaintiff, Kenneth *Harold*

Munson, in connection with crimes allegedly committed by another man, Kenneth *Wayne*

Munson.[2]  The plaintiff was investigated and arrested by two law enforcement agencies – the

Wilson County Sheriff's Office ("WCSO") and the Lewisburg Police Department ("LPD") – in

connection with two crimes allegedly committed by Kenneth W. Munson: (1) the theft of a 1998

Dodge Avenger from Rachel Gray in Wilson County, Tennessee on September 28, 2013; and (2)

the burglary of certain items – including a television and pony saddle – from the Lewisburg,

Tennessee home of Ronald and Marvin Turpin in late September or early October of 2013.  The

plaintiff has sued individuals from the two law enforcement agencies, and the LPD itself,

alleging that they violated his constitutional rights, committed various Tennessee common law

torts, and violated Tennessee statutory law when they arrested him in connection with these two

crimes.

As context, the court must note that, before the plaintiff was suspected of the theft of the

---

[1] Unless otherwise noted, the facts recounted in this section are drawn primarily from
(1) the Wilson County Defendants' Statement of Undisputed Material Facts (Docket No. 61) and
the plaintiff's response thereto (Docket No. 74-1), and (2) the Lewisburg Defendants' Statement
of Undisputed Material Facts (Docket No. 66) and the plaintiff's response thereto (Docket
No. 75-1).  This section also contains facts from the defendants' Motions for Summary Judgment
and memoranda of law in support thereof (Docket Nos. 60, 62, 63, 65), the plaintiff's Responses
in opposition (Docket Nos. 74, 75), and the defendants' Replies (Docket Nos. 76, 77) that are not
refuted or contradicted by the opposing party or the record.  Where there is a genuine dispute of
fact, the court will construe the fact in the light most favorable to the plaintiff as the non-moving
party.

[2] To avoid confusion regarding the two similarly named individuals, the court will refer
to the plaintiff, Kenneth Harold Munson, as the "plaintiff," and the alleged perpetrator of the
crimes, Kenneth Wayne Munson, as "Kenneth W. Munson."

Dodge Avenger or the burglary of the Turpin residence, he had already been developed as a suspect in a third crime that, while related to the plaintiff's claims against the defendants, does not form the basis of any of those claims. On September 27, 2013, the LPD received a report that a 1994 Chevy S10 truck had been stolen from the Turpin residence, likely by a man named "Kenneth Munson," who had been living with the Turpin brothers on a temporary basis. This reported theft was investigated by LPD Detective Scott Braden, who developed the plaintiff as a suspect, apparently because he was named "Kenneth Munson" and lived near the Turpins' home. Detective Braden later communicated his suspicion of the plaintiff to WCSO Detective Michael Barbee and LPD Detective Santiago McKlean, the two detectives who investigated the stolen Dodge Avenger and the Turpin burglary, respectively.

I.      **The Wilson County Sheriff's Office Investigation**

On September 28, 2013 – the day after the Chevy truck was allegedly stolen from the Turpin residence – the WCSO received a report of a stolen car in Wilson County. The complainant, Rachel Gray, informed a dispatched officer that she owned a 1998 Dodge Avenger and had posted the car for sale on Craigslist. According to Ms. Gray, a white male had expressed interest in purchasing the car and had arranged to meet with her at the Twins Market Store on Lebanon Road in Mt. Juliet, Tennessee. Ms. Gray took a friend, Shirley Hampton, with her when she met with the prospective buyer. When the man arrived, he told her that he wanted to test-drive the Avenger, and he offered to leave her with the keys to his vehicle – a Chevy S10 truck[3] – as insurance that he would return with her car. Ms. Gray agreed to the arrangement, and

_____

[3] In what appears to be an error, the Wilson County Defendants state that the Chevy truck that was left at the scene was an S14 model, and not an S10 (the model of the truck allegedly stolen from the Turpin residence). (Docket No. 61 ¶ 5.) None of the parties dispute, however, that the Chevy truck left with Ms. Gray at the Twins Market Store on September 28, 2013 was, in fact, the truck that had been stolen from the Turpin residence on September 27, 2013.

the man left with her car. He never returned, and she reported her car stolen.

A.     **Detective Barbee gathers evidence.**

The investigation of the stolen Dodge Avenger was assigned to defendant WCSO Detective Michael Barbee, who had been employed with the department as a general investigative detective since 2009. (Docket No. 60-3 (Decl. M. Barbee) ¶ 3.) Detective Barbee began gathering evidence regarding the theft and, on October 1, 2013, he spoke with Ms. Gray about the incident. Ms. Gray told Detective Barbee that "the suspect was a white male, approximately 5'10" and 160–170 pounds, in his fifties, blonde hair and thin in build." (Docket No. 74-1 ¶ 7 (citing Docket No. 60-3 (Decl. M. Barbee), Ex. 1.)[4] The next day, Detective Barbee received a call from LPD Detective Braden, who informed Detective Barbee that the Chevy truck left behind by the suspect in Wilson County had been reported stolen from a home in Lewisburg the day before the Dodge Avenger was stolen. Detective Braden further informed Detective Barbee that, in connection with the stolen truck, the LPD had developed a suspect named Kenneth Munson who lived in the Lewisburg area, not far from the home from which the truck was stolen. As is now clear, Detective Braden's suspect was *not* Kenneth W. Munson – who was incarcerated in Indiana at some point after the theft and burglary in Tennessee – but,

_____

[4] The plaintiff disputes that Ms. Gray gave Detective Barbee this description of the suspect, arguing that, in Detective Barbee's deposition, he "testified that he received a description, but he did not go so far in his deposition as to identify any characteristics of height, weight[,] hair color[,] and build [that] Rachel Gray made to him that he has identified in his Declaration." (Docket No. 74-1 ¶ 7.) As the Wilson County Defendants have correctly noted, however, the plaintiff never asked Detective Barbee to describe the characteristics provided by Ms. Gray in his deposition, and nowhere in the deposition, or elsewhere in the record, is there any evidence refuting this description. The court agrees with the Wilson County Defendants that "[t]he plaintiff cannot create a genuine issue of fact by relying on the absence of specific answers to questions that were never asked" during Detective Barbee's deposition. (*See* Docket No. 76, p. 13.)

rather, the plaintiff, whose home in West Shelbyville is only nine miles from the Turpin home.

Detective Barbee was given the plaintiff's date of birth and home address, which he used to obtain a photograph of the plaintiff from the Tennessee driver's license directory. Using this photograph, Detective Barbee created a printed lineup containing photographs of the plaintiff and five other individuals from the driver's license directory. On October 9, 2013, this lineup was presented to the victim, Ms. Gray; her friend and eyewitness, Ms. Hampton; and Sobby Esker, who worked at the Twins Market Store on the day that Ms. Gray's car was stolen and had observed the suspect in the store. After reviewing the photographic lineup, in which the plaintiff's picture was positioned as picture number four, all three witnesses identified the plaintiff as the man who had stolen the Dodge Avenger and signed an identification form stating the same.

During this time, Detective Barbee attempted to collect additional evidence regarding the stolen Dodge Avenger, but he was unsuccessful. For example, while at the Twins Market Store on October 9, 2013 to present the photographic lineup to Mr. Esker, Detective Barbee was informed that there were no store video recordings available from the day that Ms. Gray's car was stolen. Furthermore, Detective Barbee had processed the Chevy truck that had been recovered at the scene for fingerprints, but no identifiable latent prints were found. (Docket No. 60-1 (Depo. M. Barbee), 17:7–10.)

**B.      The plaintiff is indicted and arrested on charges in Wilson County.**

Based on Detective Barbee's investigation, the plaintiff was ultimately indicted by the Wilson County grand jury for the theft of the Dodge Avenger and arrested pursuant to a warrant issued by the grand jury. At some point prior to January 25, 2014, and in accordance with WCSO procedure, Detective Barbee presented the evidence and information he had gathered to

his supervisor, Lieutenant Ricky Knight, for department approval. Detective Barbee obtained

department approval of the case against the plaintiff, and he then presented the information and

file to the county's District Attorney, who is responsible for determining whether a criminal

investigation should be presented to a grand jury. The District Attorney approved the case

against the plaintiff and, finally, Detective Barbee presented the evidence to the Wilson County

grand jury.

The grand jury issued (1) a true bill for the indictment of the plaintiff for theft, and (2) a

warrant for the arrest of "Kenneth Munson" for "Theft of Property $1,000.00–$10,000.00" in

Wilson County. (Docket No. 74-1 ¶ 27.) On the morning of January 25, 2014, the Bedford

County Sheriff's Department arrested the plaintiff at his home in West Shelbyville pursuant to

this warrant and took him to the Bedford County Jail. After a short stay in Bedford County, the

plaintiff was transported to the WCSO, where he was mirandized and interviewed by Detective

Sergeant Jeff Johnson regarding the stolen Dodge Avenger. The parties agree that, during this

interview, the plaintiff denied any knowledge of the stolen vehicle and offered to speak with

Detective Barbee at a later time to assist in the investigation.

Two days later, on January 27, 2014, the plaintiff contacted Detective Barbee and

scheduled a time to come to the WCSO facility for an interview. At the interview, Detective

Barbee informed the plaintiff of the evidence against him and how the identifications had been

made using a photographic lineup. The plaintiff told Detective Barbee that he could not have

been involved in the theft of the Dodge Avenger because, on the day it was stolen, he was on his

way to, or already in, Monticello, Kentucky, where he needed to pick up an inventory of car

parts that he had purchased. To substantiate his story, the plaintiff provided Detective Barbee

with the names of the individuals who had assisted in his purchase that day, including contact

information for Joyce Guffey, the woman who had sold him the parts.  The plaintiff also

provided his phone and purchase records from September 28, 2013, and he told Detective Barbee

that they would prove he had not been in Wilson County on that day.  Finally, the plaintiff

informed Detective Barbee that he had been arrested for burglary in Illinois when he was

eighteen years old.  After the interview, the plaintiff was allowed to leave the WCSO facility.

      **C.**      **Detective Barbee investigates the plaintiff's alibi, and all charges against the plaintiff are dropped.**

Detective Barbee was not able confirm the plaintiff's alibi until March 17, 2014, nearly

two months after his meeting with the plaintiff.  Detective Barbee reviewed the plaintiffs'

purchase and phone records, but he found no purchases on September 28, 2013 that could

confirm the plaintiff's whereabouts on that day, let alone confirm that he had been in Monticello,

Kentucky.  Furthermore, the plaintiff's phone records did not confirm that the plaintiff had been

in Kentucky but, rather, contained a gap in the call log spanning from roughly 11:00 a.m. to 5:00

p.m. on September 28, 2013.  Additionally, despite having left a voicemail for Mrs. Guffey

requesting a return call, Detective Barbee was unable to reach her until March 17, 2014, when

she finally returned his call.

    During that call, Mrs. Guffey confirmed to Detective Barbee that she did, in fact, sell

auto parts to the plaintiff; that she observed him in Monticello, Kentucky on September 28,

2013; and that he did not have a Dodge Avenger with him while he was at her business.

Furthermore, Detective Barbee learned that, after arresting the plaintiff for burglary on March

11, 2014, the LPD had (1) discovered that the plaintiff was *not*, in fact, the Kenneth Munson who

had been living with the Turpin brothers, and (2) developed as a suspect another Kenneth

Munson who was, at the time, incarcerated in Indiana.[5] Detective Barbee informed the Wilson County District Attorney of the new information that had come to light and, in May of 2014, the district attorney dismissed all charges against the plaintiff.

## II.     The Lewisburg Police Department Investigation

On October 9, 2013, the LPD received a report that the Turpin residence in Lewisburg had been burglarized and that several items – including a 22-inch Vizio television and a pony saddle – had been taken.  On October 10, 2013, LPD Detective Santiago McKlean was assigned to investigate this report.  The Lewisburg Defendants and the plaintiff agree that, "[a]t the time of the report of the burglary at the Turpins' home on October 9, 2013, no individual was identified as a suspect in this case."  (Docket No. 75-1 ¶ 3.)  It appears from the record that, at the time Detective McKlean began to investigate this reported burglary, the LPD had not

---

[5] The plaintiff argues that Detective Barbee knew of the second Kenneth Munson before he presented the case against the plaintiff to the Wilson County grand jury, relying solely on a portion of Detective Barbee's deposition testimony that "[a] secondary Kenneth Munson came up, and I did some research, along with the other departments, to see if it was a possibility that he could be the person involved in these thefts. . . . So I took all that information to my attorney general."  (Docket No. 74-5 (Depo. M. Barbee) 12:22–13:12.)  According to the plaintiff, "Detective Barbee did not state specifically *when* another Kenneth Munson [was] developed [as a suspect], creating a genuine issue of material fact as to whether another Kenneth Munson was developed prior to the issuance of the warrant for the [p]laintiff."  (Docket No. 74-1 ¶ 43 (emphasis added).)  The plaintiff thus attempts to create a genuine issue of material fact by relying on ambiguous testimony, taken out of context, that he failed to develop or clarify during discovery.  The deposition transcript makes clear that the plaintiff never asked Detective Barbee *when* this "secondary Kenneth Munson came up," despite the fact that the timing of this revelation is, as the plaintiff acknowledges, (1) not clear from quoted testimony itself, and (2) potentially critical to the plaintiff's case.  Furthermore, when taken in the context of the rest of Detective Barbee's testimony, it is clear that Detective Barbee is referring *not* to having learned of a second Kenneth Munson before he obtained the arrest warrant but, rather, to having learned of a second Kenneth Munson before he went to the "attorney general" to request that the charges against the plaintiff be dropped.  This evidence does not, therefore, create a *genuine* dispute as to whether Detective Barbee knew of Kenneth W. Munson before he presented the case against the plaintiff to the Wilson County grand jury.

connected the burglary with Detective Braden's investigation into the Turpin's Chevy truck, which had been reported stolen two weeks earlier.

## A.     **Detective McKlean gathers evidence.**

On October 12, 2013, Detective McKlean learned that some of the items that had been burglarized from the Turpin residence had been found at a second-hand store in Lewisburg called the Variety Shop. Detective McKlean visited the Variety Shop to meet with its owners, Billy and Patricia Callahan, and he learned from them that a man had sold them a 22-inch Vizio television with the same model number as the one reported stolen by the Turpins and a pony saddle that the Turpins identified as belonging to them. The Callahans did not know the name of the man who had sold them the stolen goods, but they told Detective McKlean that the suspect was a slim, bald, white male wearing a small earring.[6] (Docket No. 75-1 ¶ 7 (citing Docket No. 67 (Decl. S. McKlean) ¶ 6).) After recovering the stolen items from the Variety Shop, Detective McKlean attempted to fingerprint them, but he was unable to identify any latent prints that could be tested.[7] (Docket No. 67 (Decl. S. McKlean) ¶ 7.)

---

[6] As with the physical description given to Detective Barbee, the plaintiff disputes that the Callahans ever gave this description to Detective McKlean, arguing that "Det[ective] McKlean did not state in his deposition that the Callahans provided any description." (Docket No. 75-1 ¶ 7.) Again, however, the plaintiff never asked Detective McKlean in his deposition to describe the characteristics provided by the Callahans, and the record contains no evidence contradicting the description as stated in Detective McKlean's declaration. As the court noted *supra* footnote 4, the plaintiff cannot create a genuine issue of fact by relying on the absence of specific information that he never requested during the defendants' depositions.

[7] The plaintiff disputes this fact by claiming that "Det[ective] McKlean stated that [the LPD] did not check the stolen items for fingerprints because they didn't have the equipment/money for that." (Docket No. 75-2, p. 5.) The plaintiff's cited support for this claim, however, clarifies that Detective McKlean told the plaintiff that the LPD had not checked the stolen *Chevy truck* for fingerprints (*see* Docket No. 75-3 (Depo. K. Munson), 89:1–23 (testifying that Detective McKlean told the plaintiff that the LPD did not have the money to "check[] the *vehicle* for [his] fingerprints" (emphasis added))), which is corroborated by testimony that it was

It appears that Detective McKlean made little progress in the investigation until January 28, 2014, the day after the plaintiff's interview with Detective Barbee in Wilson County. On that day, Detective Braden informed Detective McKlean of the WCSO's investigation into the stolen Dodge Avenger in Wilson County and his belief that the Wilson County vehicle theft was related to the stolen Chevy truck reported by the Turpin brothers, which was found at the Wilson County scene. Additionally, on that day, Detective Braden interviewed the Turpin brothers in the presence of Detective McKlean and, together, the detectives learned that (1) the Chevy truck had been stolen on September 27, 2013, the same day that the Kenneth Munson who had been living with the Turpins disappeared from their home, and (2) the items stolen from the Turpin residence had gone missing on the same day as the Chevy truck or soon thereafter. This information, along with the fact that some of the items stolen from the Turpins had been recovered at the Variety Shop within two weeks of Kenneth Munson's disappearance from the Turpin residence, caused Detective McKlean to develop the "Kenneth Munson" who had allegedly stolen the Chevy truck and the Dodge Avenger as a possible suspect for the burglary at the Turpin residence.

Around this time, Detective McKlean received information that there was a "Kenneth Munson" who was a wanted offender out of Marion County, Indiana and who had used at least five different aliases. (Docket No. 75-1 ¶ 15.) On January 31, 2014, Detective McKlean was provided with a copy of the WCSO's intake sheet for the January 25, 2014 arrest of the plaintiff, which included photographs of the plaintiff. [8] (*Id.* ¶ 19 (citing Docket No. 67 (Decl. S.

_____

the *WCSO*, and not the LPD, that processed the truck (Docket No. 60-1 (Depo. M. Barbee), 17:7–10). None of the plaintiff's testimony, or any of the other evidence in the record, suggests that Detective McKlean did not have the stolen items recovered from the Variety Shop checked for fingerprints.

[8] The plaintiff disputes this fact by stating that "Det[ective] McKlean testified that[,] on January 28, 2014, Det[ective] Braden informed him that a Kenneth Munson was a suspect

McKlean) ¶ 12).)  Detective McKlean compared the photographs of the plaintiff to a photograph

he had obtained of the Kenneth Munson who was wanted out of Indiana,[9] and he concluded that

they were photographs of the same man.[10]  (*Id.* ¶ 20 (citing Docket No. 67 (Decl. S. McKlean)

¶ 12).)  Detective McKlean did not, however, run the plaintiff's social security number or

fingerprints against the records for the Kenneth Munson incarcerated in Indiana to confirm that

they were, in fact, the same person.

On February 3, 2014, Detective McKlean contacted Detective Barbee to discuss the

WCSO's investigation into the stolen Dodge Avenger.  After describing the theft, Detective

Barbee informed Detective McKlean that, using a photographic lineup, three eyewitnesses to the

theft of the Dodge Avenger had identified the plaintiff as the person who had committed the

crime.  Detective McKlean requested a copy of the lineup, which Detective Barbee provided via

email.  Detective McKlean then met with the Callahans, the owners of the Variety Shop, and

---

regarding a motor vehicle theft."  (Docket No 75-1 ¶ 19.)  Whether or not Detective McKlean
was informed on January 28 of a suspect in the theft of the Chevy truck does not, however, have
any bearing on whether – three days later – Detective McKlean was provided with a copy of the
WCSO's intake sheet for the plaintiff's arrest.  The plaintiff cites no other evidence in the record,
nor is the court aware of any, to refute this fact.

[9] The parties did not place these photographs into the record, and the court has not,
therefore, had the opportunity to compare a photograph of the plaintiff with a photograph of
Kenneth W. Munson.

[10] The plaintiff disputes this fact, stating that "Det[ective] McKlean testified that
Det[ective] Barbee emailed him a photo lineup [and] that he did *nothing else* to connect a
Kenneth Munson to this crime other than relying on the lineup identification and that he ceased
all investigations at that point."  (Docket No. 75-1 ¶ 20 (emphasis added).)  This argument is not
an entirely accurate characterization of Detective McKlean's testimony but, more importantly,
Detective McKlean's testimony that he relied primarily on lineup identifications in his
investigation does not actually contradict the Lewisburg Defendants' assertion that, prior to
obtaining a warrant for the plaintiff's arrest, Detective McKlean compared a photograph of the
plaintiff to a photograph of the Kenneth Munson wanted out of Indiana and concluded that they
looked like the same man.

showed them the lineup that he had received from Detective Barbee.  When asked if the person who sold them the stolen items was pictured in the lineup, the Callahans both identified the plaintiff.

> **B.**      **Detective McKlean obtains and executes a warrant for the plaintiff's arrest.**

Based on the evidence he had gathered, Detective McKlean sought a warrant for the plaintiff's arrest in connection with the burglary at the Turpin residence.  On March 10, 2014, Detective McKlean prepared and submitted an Affidavit of Complaint to the clerk of the General Sessions and Circuit Courts for Marshall County, Tennessee.  In the affidavit, Detective McKlean asserts the following:

> On the above date, the defendant Kenneth H. Munson, did intentionally and knowingly commit the offense of Aggravated Burglary at [] Marvin and Ronald Turpin's residence, located at 1465 Old Farmington Rd.  The defendant did this without the effective consent of the owner.  The defendant Kenneth H. Munson, was identified on a picture line up by the Variety Shop's owner as the person who brought such items from the above residence to the Shop for sale.  This incident occurred in the City of Lewisburg Marshall County Tennessee.

(Docket No. 67-3, p. 2.)  That day, the clerk issued a warrant for the plaintiff's arrest.

Detective McKlean had been advised by Detective Barbee that the plaintiff was scheduled to appear on the Wilson County theft charges on March 11, 2014, and Detective McKlean planned to have the arrest warrant served on the plaintiff during that appearance.  As an LPD detective, Detective McKlean is not assigned a vehicle with a rear partition for the transport of suspects and prisoners, and no vehicle equipped with such a rear partition was available for his use that day.  Nevertheless, on the morning of March 11, 2014, Detective McKlean traveled to the Wilson County courthouse, where the plaintiff was present for his scheduled appearance on the Wilson County theft charge.  Detective McKlean observed the plaintiff in the courtroom and believed that he fit the physical description provided by the Callahans.  The warrant for the arrest of the plaintiff was served by a Wilson County officer.

The plaintiff contends that, when he was served with the arrest warrant, he told the arresting officer that they had "the wrong guy," before he was walked out of the courtroom and into a hallway in the courthouse, patted down, and handcuffed "in front of the general public." (Docket No. 74-3 (Depo. K. Munson), 46:3–47:2.) The plaintiff was then taken to a cell in the processing area of the courthouse, where he remained until 10:00 a.m., when he was taken back to the courtroom to appear on the Wilson County charges. (*Id.* at 47:7–24.) After his appearance, in which he entered a plea of not guilty, the plaintiff was taken back to the holding cell. (*Id.* at 49:3–8.) While in this holding cell, the plaintiff was denied access to a phone, food, bedding for his cot, and his medication. (*Id.* at 68:12–15.) The plaintiff was denied bail, and he had to spend the night of March 11, 2014 in the cell. (*Id.* at 120:10–13.)

Early on the morning of March 12, 2014, Detective McKlean – who had not been able to arrange for the use of an LPD patrol vehicle with a rear partition until after the end of his shift on March 11 – traveled to Lebanon, Tennessee to pick up the plaintiff and transport him to the Marshall County Jail. The plaintiff and the Lewisburg Defendants offer conflicting accounts of the plaintiff's interactions with Detective McKlean during this ride but, because this is summary judgment, the court must construe all disputed facts in the light most favorable to the plaintiff as the non-moving party. The plaintiff maintains that, during the ride from Lebanon to Lewisburg, he informed Detective McKlean that he had arrested the wrong person, and "Det[ective] McKlean acknowledged that there were some questions as to whether they had the right person." (Docket No. 75-2, p. 5 (citing Docket No. 75-3 (Depo. K. Munson), 76:12–77:1).) Furthermore, the plaintiff asserts that, when he asked Detective McKlean "why he would just issue a warrant for [the plaintiff's] arrest when he knew where [the plaintiff] was at and where [he] lived," Detective McKlean replied that "it was easier" to "just issue the warrant and have [the plaintiff]

picked up in court." (Docket No. 75-3 (Depo. K. Munson), 84:13–24.) The plaintiff also asserts

that, during this ride, Detective McKlean informed him that Billy Callahan, owner of the Variety

Shop, had identified the plaintiff as the man who sold him the goods stolen from the Turpin

residence. (*Id.* at 105:5–17.) The plaintiff maintains that he told Detective McKlean that he had

never been in the Variety Shop or met Mr. Callahan. (*Id.* at 105:18–20.)

Detective McKlean delivered the plaintiff to the Marshall County Jail at approximately

8:00 a.m., and the plaintiff was released on bond a little over an hour later.[11] After the plaintiff

was released from the jail, he met with Detective McKlean to discuss the theft at the Turpin

residence. The plaintiff told Detective McKlean that he was innocent, and he agreed to meet

with Detective McKlean two days later, on Friday, March 14, 2014, to participate in a lineup for

the Turpin brothers.

C.     **Detective McKlean investigates the plaintiff's claims of innocence, and the charges against the plaintiff are nolled.**

On March 14, 2014, the plaintiff and the Turpin brothers both came to the LPD's offices

to meet with Detective McKlean. The Lewisburg Defendants and the plaintiff agree that, after

viewing the plaintiff, the Turpin brothers informed Detective McKlean that the plaintiff was *not*

---

[11] The plaintiff was released from the jail on a bond that he obtained from Farrar Bonding, and he claims that Mr. Farrar told him "that this was not the first time that Mr. [Callahan] had identified the wrong person." (Docket No. 75-2, p. 5 (citing Docket No. 75-3 (Depo. K. Munson), 106:1–7).) The plaintiff further contends that Mr. Farrar informed him that "Mr. [Callahan]'s daughter was a bail bondsman for that area and Mr. Callahan had a tendency to call his daughter to bail people out of [jail] after misidentifying [them]." (*Id.* (citing Docket No. 75-3, at 106:13–16).) Because these statements are being offered for the truth of the matter asserted – *i.e.*, that Mr. Callahan had misidentified people in the past, possibly to generate business for his daughter's bail bonding business – it is hearsay, and the court is aware of no exception to, or exemption from, the rule against hearsay testimony that would apply to Mr. Farrar's statements to render them admissible. The court cannot, therefore, consider these statements in ruling on the pending motions.

the Kenneth Munson who had been living with them just before their truck was stolen and their home burglarized. The parties do not, however, agree on what was said during this meeting but, because this is summary judgment, the court must construe all disputed facts in the light most favorable to the plaintiff as the non-moving party. According to the plaintiff, after the Turpin brothers confirmed that the plaintiff was not the correct suspect, Detective McKlean showed them a picture of Kenneth W. Munson. (Docket No. 75-3 (Depo. K. Munson), 99:23–100:6.) When presented with this photograph, the Turpin brothers positively identified Kenneth W. Munson as the man who had been living with them in September of 2013. (*Id.*) The plaintiff further asserts that, when he asked Detective McKlean "why he had to go through this process," Detective McKlean responded that "mistakes happen." (Docket No. 75-2, p. 6 (citing Docket No. 75-3 (Depo. K. Munson), 100:4–6).)[12]

After Detective McKlean learned from the Turpin brothers that the plaintiff was not the correct Kenneth Munson, Detective McKlean reported their statements to the assistant district attorney and asked that the charges against the plaintiff be dropped. On March 25, 2014, the charges against the plaintiff were nolled by the Marshall County General Sessions Court.

---

[12] The plaintiff also contends that, in a conversation he had with the Turpin brothers at the LPD's office, they told him that (1) they had been shown a lineup that included the plaintiff's photograph by the LPD much earlier in the investigation, and (2) they had told the LPD that the Kenneth Munson who had been living with them and allegedly stolen their belongings was not in that lineup. (Docket No. 75-3 (Depo. K. Munson) 113:5–20.) This assertion, which is not supported by any deposition or affidavit testimony from the Turpin brothers, is offered for the truth of the matter asserted – *i.e.*, that the Turpin brothers had told the LPD that they had the wrong Kenneth Munson earlier in the investigation – and it is, therefore, inadmissible hearsay. Furthermore, the court is not aware of any applicable exception to, or exemption from, the rule against hearsay that would render these statements admissible and thereby allow the court to consider them in deciding the pending motions.

## PROCEDURAL HISTORY

On January 23, 2015, the plaintiff filed suit, alleging violations of his constitutional rights and Tennessee law. (Docket No. 1.) The plaintiff's original complaint has been amended twice to name the proper parties as defendants, and the operative complaint – the Second Amended Complaint (the "Complaint") – brings claims against the Wilson County Defendants and the Lewisburg Defendants.[13] (Docket No. 48.) Specifically, the plaintiff alleges that (1) all defendants violated his Fourth Amendment right against unlawful seizure and his right to due process of law under the Fifth and Fourteenth Amendments, for which the plaintiff asserts claims under 42 U.S.C. § 1983; (2) all defendants violated Tennessee common law prohibiting false arrest, false imprisonment, assault, battery, malicious prosecution, abuse of process, and negligence; (3) the WCSO and LPD are liable for his injuries under Tenn. Code Ann. § 40-7-101; and (4) the WCSO is liable for his injuries under Tenn. Code Ann. § 8-8-301 *et seq.* (*Id.*) The plaintiff seeks compensatory damages for pain and suffering, lost wages, and lost earning capacity; punitive damages; attorney's fees; a declaratory judgment declaring the defendants' actions unconstitutional; and injunctive relief, "precluding the [d]efendants from engaging in the conduct complained of [in the Complaint] in the future." (*Id.* at p. 21.)

---

[13] The Complaint also lists three John Doe defendants in the caption, all of whom the court has already dismissed or will dismiss. In his Response to the Lewisburg Defendants' pending motion, the plaintiff concedes that his claims against John Doe I should be dismissed. (Docket No. 75-2, p. 23.) The claims against John Doe II were dismissed with prejudice early in this litigation. (Docket No. 18.) As for John Doe III, allegedly an employee of the WCSO, it has now been a year and one-half since the plaintiff filed this action, and he still has not identified John Doe III; nor does it appear that he could currently amend the Complaint to do so. *See Moore v. Tennessee*, 267 Fed. App'x 450, 455 (6th Cir. 2008) (concluding that substituting a named defendant for a "John Doe" defendant is considered a change in parties, not a mere substitution of parties, and a plaintiff must, therefore, name the unidentified party before the statute of limitations runs on his claim).

Shortly after the plaintiff filed the Complaint, the court granted – in part – the Wilson County Defendants' Motion to Dismiss the plaintiff's claims. (Docket No. 51.) Specifically, the court dismissed all claims against the Wilson County Defendants other than: (1) official capacity claims against the Wilson County Defendants under Tennessee common law (and associated punitive damages claims), (2) individual capacity claims against Detective Barbee under both 42 U.S.C. § 1983 and Tennessee common law (and associated punitive damages claims), and (3) claims against the Wilson County Defendants pursuant to Tenn. Code Ann. § 8-8-301 *et seq.* (*Id.*; Docket No. 50, p. 16.)

On May 3, 2016, after the parties had obtained extensions of court-ordered deadlines for fact witness depositions and dispositive motions, the defendants filed their motions for summary judgment.

## I.      The Wilson County Defendants' Motion for Summary Judgment

The Wilson County Defendants filed a Motion for Summary Judgment (Docket No. 60), accompanied by a Memorandum in Support of the motion, a Statement of Undisputed Material Facts, the Declaration of Michael Barbee, Detective Barbee's investigation summary, and excerpts from the depositions of Detective Barbee and the plaintiff (Docket Nos. 60–62). In the motion, the Wilson County Defendants argue that plaintiffs' remaining claims against them should be dismissed because (1) Detective Barbee had probable cause to seek a warrant for the plaintiff's arrest and, even if he did not, he is entitled to qualified immunity from the plaintiff's § 1983 claim; (2) many of the plaintiff's common law claims are barred by sovereign immunity, and those that are not barred are wholly unsupported by evidence (including the plaintiff's request for punitive damages); and (3) the plaintiff's claim under Tenn. Code Ann. § 8-8-301 is barred, in part, by the Tennessee Governmental Tort Liability Act ("TGTLA") and, to the extent

that it is not barred, is unsupported by evidence.  (Docket Nos. 60, 62.)

On May 24, 2016, the plaintiff filed a Response in Opposition to the Wilson County Defendants' motion, accompanied by a Memorandum of Law, a Response to the Statement of Undisputed Facts, and excerpts from the depositions of Detective Barbee, Detective McKlean, and the plaintiff.  (Docket No. 74.)  In his Response, the plaintiff argues that (1) Detective Barbee did not have probable cause to seek a warrant for his arrest because he did not have reasonably trustworthy information supporting a finding of probable cause, and he is not entitled to qualified immunity from his § 1983 claim; (2) genuine questions of material fact exist as to certain of his common law claims, which are not barred by the TGTLA; and (3) his claim under Tenn. Code Ann. § 8-8-301 should be allowed to proceed against Detective Barbee.  (Docket No. 74-2.)  The Wilson County Defendants filed a Reply on June 7, 2016.  (Docket No. 76.)

## II.    <u>The Lewisburg Defendants' Motion to Dismiss and for Summary Judgment</u>

The Lewisburg Defendants filed a Motion to Dismiss and for Summary Judgment (Docket No. 63), accompanied by a Memorandum in Support of the motion, a Statement of Undisputed Material Facts, the Declaration of Santiago McKlean, the photographic lineup used in the identifications made by the Callahans, and the warrant for the plaintiff's arrest that was issued by the clerk of the Marshall County courts.  (Docket Nos. 64–67.)  In the motion, the Lewisburg Defendants argue that the plaintiff's claims against them should be dismissed because (1) Detective McKlean had probable cause to support the warrant that he obtained for the plaintiff's arrest and, even if he did not, he is entitled to qualified immunity from the plaintiff's § 1983 claim; (2) the plaintiff has failed to state a § 1983 claim against the City of Lewisburg because he has not demonstrated an unlawful municipal policy or custom; (3) the Lewisburg Defendants are immune from the plaintiff's common law claims under the TGTLA, and no

genuine dispute of material fact exists as to those claims; and (4) Tenn. Code Ann. § 40-7-101 does not authorize the plaintiff to bring a private cause of action.[14]  (Docket No. 65.)

On May 24, 2015, the plaintiff filed a Response in Opposition to the Lewisburg Defendants' motion, accompanied by a Memorandum of Law, a Response to the Statement of Undisputed Facts, and excerpts from the depositions of Detective Barbee, Detective McKlean, and the plaintiff.  (Docket No. 75.)  In his Response, the plaintiff argues that (1) Detective McKlean did not have probable cause to seek a warrant for his arrest because he was "aware of the existence of a second individual bearing the same first and last name of [the] [p]laintiff," and he is not entitled to qualified immunity from his § 1983 claim; (2) the Lewisburg Defendants are not immune from his common law claims, and genuine issues of material fact exist to support those claims; and (3) Tenn. Code Ann. § 40-7-101 implicitly creates a private right of action for plaintiffs who have been wrongfully arrested.  (Docket No. 75-2.)  The Lewisburg Defendants filed a Reply on June 7, 2016.  (Docket No. 77.)

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the

---

[14] In their motion, the Lewisburg Defendants argue that the plaintiff's claims against them under Tenn. Code Ann. § 8-8-301 should be dismissed, because that code section "applies only to Sheriffs within the State of Tennessee" and not to police departments and officers. (Docket No. 65, p. 27.)  The Complaint, however, does not appear to allege a claim against the Lewisburg Defendants under § 8-8-301.  (Docket No. 48 ¶ 113 (stating only that Wilson County is liable pursuant to that section).)  Furthermore, the plaintiff concedes in his response to the Lewisburg Defendants' motion that his claims against them brought pursuant to § 8-8-301 should be dismissed.  (Docket No. 75-2, p. 23.)

plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## ANALYSIS

In the Complaint, the plaintiff asserts that the defendants, in both their official and individual capacities, violated his First, Fourth, Fifth, and Fourteenth Amendment rights, for which he brings claims against them pursuant to 42 U.S.C. § 1983. (Docket No. 48 ¶¶ 61–62.) In his responses to the pending motions, the plaintiff has abandoned his § 1983 claims against all defendants that are based on alleged violations of the First, Fifth, and Fourteenth Amendments, and he has also abandoned his § 1983 claims against the City of Lewisburg and Detective McKlean in his official capacity.[15] (Docket No. 75-2, pp. 8, 13.) Furthermore, in August of

---

[15] The plaintiff does not explicitly state that he is abandoning his claim against Detective McKlean in his official capacity but, as the court noted in its Memorandum on the Wilson County Defendants' prior Motion to Dismiss, claims against an agent of a governmental entity in

2015, the court dismissed the plaintiff's § 1983 claims against Sheriff Bryan in his official and individual capacities and against Detective Barbee in his official capacity. (Docket No. 50, pp. 7–12.) The plaintiff's remaining § 1983 claims, therefore, are claims that Detectives Barbee and McKlean – in their individual capacities – violated his Fourth Amendment rights when they caused him to be arrested and imprisoned. (*See* Docket No. 48 ¶¶ 66–67.) For the reasons discussed below, these remaining § 1983 claims will be dismissed, and the court will decline to extend supplemental jurisdiction over any remaining state law claims in this action.

## I.     Section 1983 Claims Against Detectives Barbee and McKlean

Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones–Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to prevail on a § 1983 claim, a plaintiff must prove two elements: (1) that he suffered a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983. The defendants do not dispute that they acted under color of state law when they obtained and executed warrants for the plaintiff's arrest. The court must, therefore, turn to the question of whether the facts in the record, viewed in the light most favorable to the plaintiff, can support a finding that either Detective Barbee or Detective McKlean deprived the plaintiff of his Fourth Amendment right to

---

his official capacity are to be construed as claims against the governmental entity. (Docket No. 50, pp. 7–8, n.7.) The plaintiff has conceded that, after discovery, he has no viable claim against the City of Lewisburg (Docket No. 75-2, p. 13), and he cannot, therefore, maintain a claim against Detective McKlean in his official capacity.

be free from unlawful seizure.[16]

The Supreme Court has held that the test for whether an arrest is constitutionally valid is "whether, at the moment the arrest was made, the officers had probable cause to make it – whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *accord United States v. Dotson*, 49 F.3d 227, 230 (6th Cir. 1995). A false arrest claim under federal law, therefore, requires the plaintiff "to prove that the arresting officer lacked probable cause to arrest [him]." *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005). The Sixth Circuit has defined "probable cause" as "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *Sykes v. Anderson*, 625 F.3d 294, 306 (6th Cir. 2010) (quoting *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005)). In determining whether probable cause existed, the court must consider "the totality of the circumstances" at the time that the defendants sought and executed the warrants for the plaintiff's arrest. *Illinois v. Gates*, 462 U.S. 213, 231–34 (1983); *Smith v. City of Wyoming*, 821 F.3d 697, 714–15 (6th Cir. 2016). It should be noted, as well, that the probable cause

---

[16] In addition to arguing that they did not violate any of the plaintiff's constitutional rights, the defendants contend that they are entitled to qualified immunity from the plaintiff's claims. (Docket No. 62, pp. 29–31; Docket No. 65, pp. 16–18.) Qualified immunity protects government officials "performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). However, because the court finds – as discussed more fully below – that no reasonable jury could conclude that Detective Barbee or Detective McKlean lacked probable cause for the plaintiff's arrest, there is no basis for finding that a constitutional violation occurred and, therefore, the court need not reach the question of whether the detectives are entitled to qualified immunity.

standard requires "only the probability, and not a *prima facie* showing, of criminal activity" and "does not require the more exacting precision of the beyond a reasonable doubt or the preponderance of the evidence standards." *Legenzoff v. Steckel*, 564 F. App'x 136, 142 (6th Cir. 2014) (citing *Gates*, 462 U.S. at 233–34).

### A. Detective Barbee

No reasonable jury could conclude that Detective Barbee lacked probable cause for the plaintiff's arrest in connection with the theft of the Dodge Avenger at the time that the arrest warrant was executed. It is undisputed that, at the time that he presented the case against the plaintiff to the grand jury, Detective Barbee was aware that (1) the plaintiff was suspected of having stolen the Chevy truck used by the suspect in the theft of the Dodge Avenger and lived only nine miles from the home where that truck was stolen; and (2) in response to a photographic lineup containing a picture of the plaintiff, three separate eyewitnesses had identified the plaintiff as the man who had stolen the Dodge Avenger. This evidence is, on its own and as a matter of law, sufficient to establish probable cause. *Kavanaugh*, *v. Lexington Fayette Urban Cnty. Gov't*, 638 F. App'x 446, 451 (6th Cir. 2015) ("Law enforcement officers are entitled to rely on an eyewitness identification of a suspect to establish the probable cause necessary for an arrest."); *Legenzoff*, 564 F. App'x at 142 ("In assessing probable cause, this Court has held that an eye witness identification and accusation, by itself, is sufficient to establish probable cause."). Furthermore, the plaintiff has advanced no arguments and presented no evidence challenging the trustworthiness of these identifications.

Additionally, the warrant for the plaintiff's arrest was issued pursuant to an indictment by the Wilson County grand jury. As a general rule, "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable

cause." *Kavanaugh*, 638 F. App'x at 451 (quoting *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006)). To overcome the presumption that an indictment is supported by probable cause, the plaintiff must show that an officer procured the indictment, and the accompanying arrest warrant, by making "false statements either knowingly or in reckless disregard for the truth." *Id.*; *accord Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014). The plaintiff has not challenged the validity of the grand jury generally, or the facial fairness of the indictment specifically, and so, to overcome the presumption of probable cause supporting the indictment against him, the plaintiff must make a showing that Detective Barbee knowingly, or in reckless disregard for the truth, made false statements to the grand jury in pursuit of that indictment. The plaintiff argues that Detective Barbee omitted critical information when he – presumably[17] – "withheld the existence of a second Kenneth Munson at the time he presented facts to the grand jury." (Docket No. 74-2, p. 22.) As the court has already noted, however, there is no evidence that Detective Barbee was aware of this second Kenneth Munson at the time that he testified before the grand jury. Furthermore, even if Detective Barbee *was* aware of a second Kenneth Munson, knowledge of the mere "existence" of a man with the same name as the plaintiff is not, without more, evidence of the plaintiff's innocence sufficient to overcome the presumption of probable cause that arises from a grand jury indictment supported by eyewitness identifications. *Cf. Legenzoff*, 564 F. App'x at 142 (noting that the probable cause standard "does not require the more exacting precision of the beyond a reasonable doubt or the preponderance of the evidence standards").

The plaintiff advances several additional arguments in support of his claim that Detective

---

[17] The record does not contain the testimony presented to the grand jury but, based on Detective Barbee's knowledge of the case at the time and other evidence before the court, it is reasonable to assume that Detective Barbee informed the grand jury of the eyewitness identifications but not of the possibility that a second Kenneth Munson could exist.

Barbee lacked probable cause, but each is wholly unsupported by the law. For example, the plaintiff argues that probable cause did not exist for his arrest because, when the theft charges against him were dismissed on May 14, 2014, the dismissal cited a lack of probable cause. (Docket No. 74-2, p. 20.) The probable cause determination, however, is based upon the defendant's knowledge *at the time* that he obtained and executed the arrest warrant, and not upon later determinations of probable cause after further investigation has been completed. *See Manley v. Paramount's Kings Island*, 299 F. App'x 524, 530 (6th Cir. 2008) ("[A]n arrest may be grounded on probable cause even if charges are later dropped or the defendant is acquitted."). The plaintiff also argues that Detective Barbee "ignored" his pleas of innocence and "had an obligation to continue an investigation into exculpatory evidence." (Docket No. 74-2, p. 22.) First, the plaintiff appears to confuse the relevant time period for the probable cause inquiry; the inquiry must focus on Detective Barbee's knowledge *when he obtained the arrest warrant*, and not after the arrest, when the plaintiff first protested his innocence. Second, it is well established that "a police officer has no duty to search for exculpatory facts if the facts within the officer's knowledge establish probable cause." *Dodd v. Simmons*, No. 15-6145, 2016 WL 3613389, at *4 (6th Cir. July 6, 2016); *accord Nerswick v. CSX Transp., Inc.*, 441 F. App'x 320, 323 (6th Cir. 2011) ("Once an officer obtains probable cause, . . . he has no further obligation to continue the investigation and may instead pursue arrest of the suspect.").

Based on the evidence in the record, no reasonable jury could conclude that Detective Barbee lacked probable cause for the plaintiff's arrest and, thereby, violated the plaintiff's Fourth Amendment right to be free from unlawful seizure. Accordingly, the court will grant the Wilson County Defendants' Motion for Summary Judgment with respect to the plaintiff's § 1983 claims.

## B. Detective McKlean

No reasonable jury could conclude that Detective McKlean lacked probable cause for the plaintiff's arrest when he obtained an arrest warrant from the Marshall County court. It is undisputed that, at the time that he submitted the Affidavit of Complaint in support of a warrant for the plaintiff's arrest, Detective McKlean knew that, in response to a photographic lineup, the plaintiff had been identified by (1) eyewitnesses to a theft in Wilson County that Detective McKlean believed was related to, and perpetrated by, the same person as the suspect who committed the Lewisburg burglary; and (2) the owner of the shop where the burglary suspect had sold the items stolen during that burglary. As already discussed above, this evidence is, on its own and as a matter of law, sufficient to establish probable cause. *Kavanaugh*, 638 F. App'x at 451; *Legenzoff*, 564 F. App'x at 142. Furthermore, the plaintiff has advanced no arguments and presented no evidence that challenges the trustworthiness of these identifications.[18]

Additionally, the warrant for the plaintiff's arrest was issued on March 10, 2014 by the clerk of the General Sessions and Circuit Courts for Marshall County, Tennessee. As the Sixth Circuit has consistently held, "[a]n arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment made pursuant to § 1983." *Voyticky*, 412 F.3d at 677 (citing *Baker v. McCollan*, 443 U.S. 137, 143–44 (1979)); *accord Robertson*, 753 F.3d at 618. The plaintiff has not challenged the facial validity of the arrest warrant issued by the clerk of the Marshal County courts, nor has he challenged the

---

[18] The plaintiff *has* attempted to introduce evidence that Mr. Callahan, the owner of the Variety Shop and one of the eyewitnesses to identify the plaintiff, regularly misidentified suspects to increase business for his daughter's bail bonding business. *See supra* note 11. The court has already determined, however, that it cannot consider this evidence because it is inadmissible hearsay and, furthermore, the plaintiff has placed into the record no evidence suggesting that Detective McKlean was aware of these rumors and would, therefore, have reason to question the reliability of Mr. Callahan's identification of the plaintiff.

warrant application or approval process.  Furthermore, the court is aware of no indicia of unreliability that are apparent from the face of the warrant and that would justify any finding that the warrant was invalid.  Rather, Detective McKlean's affidavit, which is written into the warrant, states that the plaintiff was identified by eyewitnesses as having sold the items stolen during the burglary, evidence which, as the court has already noted, is legally sufficient to establish probable cause.

To overcome the presumption that a facially valid arrest warrant is supported by probable cause, the plaintiff must demonstrate that, in order to procure the warrant, the defendant officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood and such statements or omissions [we]re material, or necessary, to the finding of probable cause." *Sykes*, 625 F.3d at 305 (quoting *Wilson v. Russo*, 212 F.3d 781, 786–87 (3d Cir. 2000)) (internal quotation marks omitted).  If an affidavit in support of an arrest warrant *does* contain false statements or material omissions, the court must "set aside the statements and include the information omitted in order to determine whether the affidavit is still sufficient to establish probable cause." *Id.*

The plaintiff argues that Detective McKlean made a material omission when he failed to inform the Marshall County clerk of "the existence of a second individual bearing the same first and last name of [the] [p]laintiff."  (Docket No. 75-2, p. 9.)  It is undisputed that, prior to obtaining the warrant for the plaintiff's arrest, Detective McKlean (1) knew that there was a "Kenneth Munson" who was a wanted offender out of Indiana and (2) had seen a photograph of this man.  Based on this information, and drawing all reasonable inferences in the light most favorable to the plaintiff, it appears that Detective McKlean either knew – or at the least, should

have known[19] – of the existence of a second individual with the same first and last names as the plaintiff.  As the court has already noted, however, the mere "existence" of a man with the same name as the plaintiff is not, without more, evidence of the plaintiff's innocence sufficient to overcome the presumption of probable cause that arises from a facially valid warrant supported by eyewitness identification.[20]  Nor is Detective McKlean's alleged acknowledgment to the plaintiff – made during the ride to the Marshall County Jail and in response to the plaintiff's protestations of innocence – that there could be doubts as to whether he had "the right person" sufficient to overcome this presumption.  As the court has already noted, the probable cause standard does not require detectives to establish a suspect's guilt beyond a reasonable doubt before an arrest.  Rather, it requires only that the evidence within the officer's knowledge at the relevant time establishes "the probability" that the suspect committed a crime.  *Legenzoff*, 564 F. App'x at 142.

The plaintiff advances several additional arguments in support of his claim that Detective McKlean lacked probable cause, but each is wholly unsupported by the law.  First, the plaintiff argues that, when the charges against him were nolled, court documents cited a lack of probable cause as the reason.  (Docket No. 75-2, p. 9.)  The court has already rejected a similar argument made by the plaintiff with regard to his § 1983 claim against Detective Barbee, but it bears

---

[19] Detective McKlean claims that, based on his comparison of this photograph with a photograph of the plaintiff, he concluded that they were photographs of the same man.

[20] The plaintiff *has* attempted to introduce additional evidence that, *before* the plaintiff was arrested by the Detective McKlean, the Turpin brothers had already informed the LPD that the plaintiff was not the Kenneth Munson who had been living with them and allegedly stolen their belongings.  *See supra* note 12.  The court has already determined, however, that it cannot consider this evidence because it is inadmissible hearsay and, furthermore, the plaintiff has placed into the record no additional evidence corroborating this assertion or suggesting that this pre-arrest meeting between the LPD and the Turpin brothers even occurred.

repeating that the probable cause determination is based upon the defendant's knowledge *at the time* that he obtained and executed the arrest warrant, and not upon later determinations of probable cause after further investigation has been completed.  *See Manley*, 299 F. App'x at 530 (6th Cir. 2008).  Second, the plaintiff argues that Detective McKlean did not have probable cause because he relied, in part, on identifications made in Wilson County and did not "ask Wilson County whether the lineup was done properly and had no knowledge of whether it was done properly."  (Docket No. 75-2, p. 11.)  An officer's reliance on work done by another law enforcement agency, and his failure to "double-check" the accuracy of the information obtained by another agency, does not – without more – amount to a civil rights violation.  *See Snyder v. United States*, 590 F. App'x 505, 514 (6th Cir. 2014) (stating that failure to double-check the accuracy of information within another agency's file "might be tantamount to negligence, but negligence does not equate to a constitutional violation" (internal quotation marks omitted)). Finally, the plaintiff contends that Detective McKlean should have "check[ed] the [p]laintiff's social security number, with which he could have checked criminal records databases."  (Docket No. 75-2, p. 11.)  Detective McKlean was not, however, under any obligation to "investigate further or to look for additional evidence which may exculpate the accused" once he had the identification from the Variety Shop owners and, thereby, probable cause.  *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999). Furthermore, the plaintiff does not explain *how* a check of the criminal records databases could have revealed exculpatory evidence sufficient to overcome positive identifications by the Callahans.  To the contrary, it is entirely likely that a check of the criminal records databases would have revealed that the plaintiff had been arrested for burglary in Illinois in the past.

Based on the evidence in the record, no reasonable jury could conclude that Detective

Barbee lacked probable cause for the plaintiff's arrest and, thereby, violated the plaintiff's Fourth Amendment right to be free from unlawful seizure. Accordingly, the court will grant the Lewisburg Defendants' Motion to Dismiss and for Summary Judgment with respect to the plaintiff's § 1983 claims.

## II.     <u>State Law Claims Against All Defendants</u>

Because the court is dismissing the plaintiff's § 1983 claims – his only federal claims – the court must decide whether it will exercise supplemental jurisdiction over the plaintiff's remaining state law claims. There is a strong presumption against the exercise, under 28 U.S.C. § 1367, of supplemental jurisdiction over remaining state law claims once all federal claims have been dismissed, and residual supplemental jurisdiction should be exercised sparingly. *Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 584 (6th Cir. 2011); *see also Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 522 (6th Cir. 2007) ("[R]esidual supplemental jurisdiction [should] be exercised with hesitation, to avoid needless decisions of state law."); *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims."). The court, therefore, declines to exercise supplemental jurisdiction over the plaintiff's remaining state law claims.

Even if the court were to exercise supplemental jurisdiction over those claims, however, it bears noting that the plaintiff's claims of false arrest, false imprisonment, malicious prosecution, assault, and battery would not survive summary judgment. The plaintiff's claims of false arrest, false imprisonment, and malicious prosecution all require him to demonstrate that the defendants lacked probable cause to arrest and prosecute him. *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 54 (Tenn. Ct. App. 2013) (false arrest and false imprisonment); *Brown v.*

*SCOA Indus., Inc.*, 741 S.W.2d 916, 919–20 (Tenn. Ct. App. 1987) (false imprisonment); *Crowe v. Bradley Equip. Rentals & Sales, Inc.*, No. E2008-02744, 2010 WL 1241550, *5 (Tenn. Ct. App. Mar. 31, 2010) (citing *Roberts v. Fed. Express Corp.*, 842 S.W.2d 246, 247–48 (Tenn. 1992)) (malicious prosecution).  As already discussed, however, no reasonable jury could find that Detectives Barbee and McKlean lacked probable cause to arrest the plaintiff.  Furthermore, under Tennessee's doctrine of police privilege, a finding that officers had probable cause to arrest the plaintiff entitles them to use reasonable force to effectuate an arrest and defeats a common law assault or battery claim.  *See Christian Bros. Univ.*, 428 S.W.3d at 57–58.[21]

The plaintiff's claim under Tenn. Code Ann. § 40-7-101 against the City of Lewisburg also would not survive summary judgment.  In August of 2015, the court dismissed an identical claim against the Wilson County Defendants, stating that § 40-70-101 does not provide for a private right of action and that the plaintiff's "invocation of § 40-7-101 . . . appears to be an attempt to shoehorn his Tennessee common law claims for false arrest and false imprisonment (which are contained separately in the Complaint) into claims for statutory violations."  (Docket No. 50, p 15.)  For these same reasons, the plaintiff's § 40-7-101 claim against the Lewisburg Defendants would fail.

---

[21] The plaintiff has not alleged, nor has he argued, that any of the defendants used unreasonable force in arresting him.  Rather, the basis for his assault and battery claim is that defendants – specifically, Detective McKlean – "intended to place [the] [p]laintiff in handcuffs, which is an unpermitted touching and offensive contact."  (Docket No. 75-2, p. 17.)

## <u>CONCLUSION</u>

For the reasons discussed herein, the Motion for Summary Judgment filed by the Wilson County Defendants and the Motion to Dismiss and for Summary Judgment filed by the Lewisburg Defendants will be granted.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge